Steven L. Rinehart (USB #11494)
110 S. Regent Street, Suite 200
Salt Lake City, UT 84111
Telephone: (888) 941-9933
Mobile: (801) 347-5173
Facsimile: (801) 665-1292
Email: steve@uspatentlaw.us
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BRADLEY T. GOUDLING, an individual;<br><br>                                        Plaintiff,<br>vs.<br><br>XCENTRIC VENTURES, LLC d/b/a RIP-OFF REPORT, EDWARD MAGEDSON, and JOHN DOES 1 - 5;<br><br>                                        Defendants. | **COMPLAINT**<br><br>Judge David Sam<br><br>Case No. 2:14-CV-00810 |

COMES NOW the Plaintiff Bradley T. Goulding, by and through counsel undersigned, and for cause of action against Defendants hereby alleges and claims as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Bradley T. Goulding ("Goulding") is an individual residing in Utah County, State of Utah.

2. Xcentric Ventures, LLC ("Xcentric") is a limited liability company organized under the laws of the State of Arizona with its principal place of business in Phoenix, Arizona.

3. Edward Magedson ("Magedson") is an individual residing in the State of Arizona.

1

4. Xcentric operates websites resolved to by the Internet domain names <ripoffreport.com> and <badbusinessbureau.com>.

5. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the matter in controversy, exclusive of interests and costs, exceeds the sum or value of seventy-five thousand dollars ($75,000). In addition this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because claims arise under § 43 of the Lanham Act, codified at 15 U.S.C. § 1125 and §§ 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act (RICO), codified inter alia at 18 U.S.C. §§ 1962(d) and 1962(d). This Court also has jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338(a); and under Utah Code Ann. § 78-27-24 (1996) through Fed R. Civ. P. 4(K)(1)(A).

6. Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400(b), and under 15 U.S.C. §§ 1125.

7. This Court has personal jurisdiction of Defendants because, inter alia, they operate a commercial, interactive website in the State of Utah.

### III.   GENERAL ALLEGATIONS

*Plaintiff's Background*

8. Plaintiff Bradley T. Goulding is a prominent businessman in Salt Lake City, Utah. Mr. Goulding entered the business community after obtaining a Bachelor of Science degree with an emphasis in Finance from Brigham Young University in 1981. Since entering the business community over three decades ago, Mr. Goulding has worked in numerous industries which have included catering and conference services, construction, clubs, golf, homeowner associations, hotels and vacation condominiums, manufacturing,

        marinas, mobile applications, real estate, restaurants, satellite communications and software as a service. In addition, Mr. Goulding's experience includes positions as a Consultant, Controller, Vice President, Chief Financial Officer, Chief Executive Officer, President and Director, and he has worked in multiple US states and in Mexico.

9. Over the course of his career and in the professional capacities in which he has worked, Mr. Goulding has used, and been known by, his common law service mark BRADLEY T. GOULDING (the "Mark"), which has become well-known throughout the business community. Goulding has been featured in newspapers, blogs, and media outlets over his career, each of which has recognized the Plaintiff by his common law Mark. Plaintiff has accrued his common law service mark BRADLEY T. GOULDING. The association in the mind of the public between Plaintiff and the BRADLEY T. GOULDING Mark is extensive.

10. The Plaintiff was an officer and director of Premier Resorts International Inc. ("Premier Resorts") from 2004 onward. By 2008, Premier Resorts was grossing nearly $100 million annually in revenue. In 2009, a series of financial problems confronted Premier Resorts, including Wells Fargo Bank shutting down Premier Resorts' checking and merchant accounts and seizing nearly $500,000 in reserve funds. Following these problems and the dissolution of the business, defamatory content about Plaintiff appeared on numerous websites, including content at the domain names <ripoffreport.com>, <badbusinessbureau.com>, <bradley-t-goulding.com> and <bradley-goulding.com>. Content on these websites was and continues to be dedicated not just to stigmatizing Mr. Goulding as a criminal without basis or conviction, but to the personal ruin of Mr. Goulding, his Mark, and his economic relations in the business community.

11. Defendants have constructed and published websites containing false, misleading and defamatory information antithetical to, and calculated to interfere with, Plaintiff's economic relationships with other parties. These websites contain misstatements of fact concerning Plaintiff and baseless allegations and disparaging characterizations of Plaintiff.

12. Information on these websites, including <ripoffreport.com> is, in fact, highly libelous, from allegations that Mr. Goulding has embezzled two million dollars to baseless allegations that Plaintiff has declared bankruptcy three times and is a sexual predator. All of these allegations are false.

13. These allegations are calculated to interfere with Mr. Goulding's business affairs by directing Internet traffic to the allegations using domain names which wholly incorporate, and are identical to, Mr. Goulding's common law service mark in BRADLEY T. GOULDING.

14. As examples, Plaintiff has attached screenshots of content on <ripoffreport.com> collectively as **Exhibit A**.

15. The Plaintiff has attached screenshots of content on <badbusinessbureau.com> collectively as **Exhibit B**.

16. The Plaintiff has attached exemplary screenshots of content on <bradley-goulding.com> and <bradley-t-goudling.com> collectively as **Exhibit C**.

17. Defendants' conduct evidences a malicious and purposeful campaign intended to embarrass, discredit, and defame Plaintiff and to vitiate, dishonor, and impair the reputation and goodwill of Plaintiff and his Mark.

18. Upon information and belief, Magedson founded and maintains the content at <ripoffreport.com> and <badbusinessbureau.com>.  Magedson controls content on these websites together with assistance from of a plurality of subordinates.

19. These websites maintained by Magedson purport to expose third-parties who "ripoff" others, and targets numerous parties in the State of Utah.

20. Magedson and Xcentric have solicited, developed, permitted, and published on these websites in the form of metadata, titles, headings and graphic and textual content numerous false and deceptively misleading statements of fact concerning Plaintiff.

21. Defendants authored and published content for the purpose, inter alia, of extorting Plaintiff and other parties.  Defendants have optimized this content to cause maxim damage in search engines to those subjects targeted by the content.

22. Defendants Xcentric and Magedson, through their agents, have established the "Rip-off Report Corporate Advocacy Business Remediation and Customer Satisfaction Program" and "VIP Arbitration" program.  Through these "programs" Magedson and Xcentric offer to remove and/or mitigate defamatory content from the websites <ripoffreport.com> and <badbusinessbureau.com> for a fee, effectively extorting en masse parties whom Defendants are libeling.

23. Within a week of the defamatory content being posted online, Defendants at Xcentric called Plaintiff telephonically and informed Plaintiff that if he paid a fee, Xcentric would take steps to remove the defamatory content from the websites.

24. Defendants' websites are commercial in nature, actively soliciting and receiving fees to remove libelous material from the Internet.  Defendants continue to pose a threat of harming Plaintiff through creation, publishing and promulgating of libelous content.

25. Defendants' unlawful conduct has and will damage the Plaintiff through the loss of customers, profits, business, reputation, and good will. Plaintiff has suffered further damage through expenditures associated with bringing this action.

### FIRST CAUSE OF ACTION
### DEFAMATION
### (Against Xcentric and Magdeson)

26. Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

27. Defendants have developed, created, solicited, and published false statements on websites about Plaintiff with knowledge that the statements are false and defamatory or with reckless disregard for the truth of the statements or with negligence in failing to ascertain the truth of the statements.

28. Such statements include inter alia allegations that Plaintiff has embezzled $2 million dollars, that Plaintiff is guilty of sex crimes, and that Plaintiff has declared bankruptcy three times.

29. These statements have caused Plaintiff extreme harm. Defendants' unlawful conduct has damaged Plaintiff in an amount to be determined at trial and entitles Plaintiff to compensatory and punitive damages, as well as costs and fees.

30. Because his remedy at law is inadequate, Plaintiff seeks preliminary and permanent injunctive relief to protect his reputation and interests. Unless Defendants are restrained and enjoined, Defendants will continue to harm Plaintiff irreparably, thereby further damaging Plaintiff and impairing Plaintiff' business and personal reputation.

### SECOND CAUSE OF ACTION
### CIVIL CONSPIRACY
### (Against Xcentric and Magdeson)

31. Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

32. Defendants and their agents have a common design by means of concerted action to solicit, develop, create and publish on the Websites false and misleading statements regarding Plaintiff.

33. Defendants and their agents have solicited, developed, created, and published on websites false and misleading statements.

34. Through "programs" like Defendants' "Rip-off Report Corporate Advocacy Business Remediation and Customer Satisfaction Program" and the "VIP Arbitration" and other solicitations, Defendants offer to mitigate or eliminate the defamatory content on the websites for money.

35. Xcentric and Magedson conspire with third-parties who desire to defame others for their own profit.

36. These actions constitute a civil conspiracy to coerce other parties for money. These actions also constitute a civil conspiracy to create, solicit and publish defamatory, false and/or misleading statements regarding Plaintiff. These actions have caused Plaintiff to incur loss and damages and entitle Plaintiff to compensatory and punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### R.I.C.O. – 18 U.S.C. § 1962(d)
### (Against Xcentric and Magdeson)

37. Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

38. Xcentric is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

7

39. Magedson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

40. Xcentric is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), which enterprise was engaged in and the activities of which affected interstate commerce during the relevant times.

41. Magedson was employed or associated with the enterprise.

42. Magedson and Xcentric conducted and participated in, directly or indirectly, the conduct of the affairs of Xcentric through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), to wit:

   (a) Magedson and Xcentric have repeatedly attempted to obtain Plaintiff's property (money), with his consent, through wrongful use of actual or threatened fear by requiring payment to remedy the publication of false and defamatory statements that Magedson and Xcentric created and/or solicited. This conduct amounts to extortion under 18 U.S.C. § 1951(b)(2).

   (b) Magedson and Xcentric have repeatedly and intentionally used the websites <badbusinessbureau.com> and <ripoffreport.com> as a scheme to obtain money from many parties by means of false and defamatory complaints created or solicited by Magedson and Xcentric.

   (c) Magedson and Xcentric have repeatedly emailed other parties requesting that they pay a fee before Defendants would take any action on the defamatory material on the websites. This conduct amounts to wire fraud under 18 U.S.C. § 1343.

43. Magedson and Xcentric's violation of 18 U.S.C. § 1962(c) has caused Plaintiff to lose business and damaged Plaintiff's name, business affairs, trademark, reputation and

interests. Unless Defendants are enjoined, Defendants will continue to irreparably harm Plaintiff and Defendants' representations of fact will further damage Plaintiff and impair Plaintiff's reputation and activities.

44. Because his remedy at law in inadequate, Plaintiff seeks preliminary and permanent injunctive relief to protect its reputation and interests. Unless Defendants are restrained and enjoined, Defendants will continue making false representations of fact about Plaintiff and will continue to harm Plaintiff.

## FOURTH CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT
### (Against John Does 1-5)

45. Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

46. Plaintiff has common law trademark rights in the mark BRADLEY T. GOULDING (the "Mark"), and has exclusive rights to use of the Mark.

47. Plaintiff has never authorized, licensed, or otherwise permitted Defendants to use the Mark.

48. Defendants John Does 1-5 have registered domains which wholly incorporate the Mark, or are confusingly similar thereto, including <bradley-t-goulding.com> and <bradley-goulding.com>.

49. Defendant Does 1 - 5 maintain, and/or have maintained, websites resolved to by the Disputed Domains which makes use of the Mark to confuse those searching for Plaintiff.

50. By refusing to return the Disputed Domains, and in registering and making use of them, Defendants are damaging the intellectual property rights and substantial good will developed by Plaintiff.

51. Defendant Does 1-5 in using, and intending to continue use of, the Disputed Domains are infringing the common law Mark of Plaintiff.

52. Defendants have, are, and will continue to use the Mark with intent to confuse and/or cause initial interest confusion to Plaintiff's clients and the public at large.

53. Defendants are willfully infringing upon Plaintiff's intellectual property with knowledge of the Mark.

54. Internet Traffic to the Disputed Domains constitutes individuals initially interested and lured to the Disputed Domains by Defendant's use of the Plaintiff's Mark.

55. As a result of Defendants' infringement, Plaintiff has suffered irreparable harm. Unless Defendants are permanently enjoined from further infringement, Plaintiff will continue to suffer irreparable harm.

56. A permanent injunction is necessary to prevent Defendants from further interference with Plaintiff's intellectual property, including an order that Defendant Does 1-5 cease all domain registrations wholly or partially incorporating Plaintiff's Mark.

57. As a result of Defendants' infringement under 15 U.S.C. § 1114, Plaintiff has been injured and is entitled to damages, including but not limited to, Plaintiff's lost profits from Defendants' use of the Disputed Domains, actual damages to be determined at trial, treble damages, statutory damages, and costs and attorney fees.

### FIFTH CAUSE OF ACTION
### CLAIM FOR CORRECTIVE ADVERTISING DAMAGES
### (Against John Does 1 - 5)

58. Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

59. Defendants have damaged Plaintiff with their advertising, and this advertising has been ruinous to the goodwill and reputation of Plaintiff's Mark. Defendants have also otherwise caused misinformation in the marketplace as to the origin, source or sponsorship of Plaintiff's services.

60. Plaintiff seeks those damages arising from this advertising injury, including but not necessarily limited to monies sufficient to compensate Plaintiff for the damage to Plaintiff's goodwill and/or the cost for correcting the misinformation in the marketplace.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT UNDER 15 U.S.C. § 1125(d)
### (Against John Does 1 – 5)

61. Plaintiff incorporates and realleges all of the foregoing paragraphs as if fully set forth herein.

62. This is a claim pursuant to 15 U.S.C. § 1125(d), the Anticybersquatting Consumer Protection Act (ACPA), seeking damages for registration and use of the Disputed Domains.

63. Plaintiff has a common law service mark rights wholly incorporated by the Disputed Domains.

64. Plaintiff has common law trademark rights to which the Disputed Domains are identical or nearly identical.

65. Defendants are using, and have used, the Disputed Domains with the bad faith intent to profit from Plaintiff's Mark, including the name by which Plaintiff is commonly known.

66. The Disputed Domains consist of the legal name of Plaintiff, in which Plaintiff has trademark rights.

67. Defendants have not made prior use of the Disputed Domains in connection with a bona fide offering of goods or services.

68. Defendants have intended to divert consumers from Plaintiff to harm Plaintiff's goodwill in the Mark.

69. Plaintiff has been damaged extensively as a result of Defendants' unlawful conduct.

70. Under the ACPA, Plaintiff is entitled to statutory damages of $100,000 against Defendants.

71. Plaintiff is further entitled to transfer of the Disputed Domains, actual damages to de determined at trial, treble damages, and cost of suit and attorney fees.

## SEVENTH CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH BUSINESS/ECONOMIC RELATIONS
(Against All Defendants)

72. Plaintiff incorporates and realleges all of the foregoing paragraphs as if fully set forth herein.

73. Defendants have intentionally interfered with Plaintiff's existing and potential economic relations by intentionally creating and publishing content across the Internet calculated to harm Plaintiff's economic relationships with other parties.

74. Plaintiff has been injured as a result of Defendants' interference.

75. Defendants interfered with Plaintiff's existing and potential economic relations through the improper means of maintaining illegitimate control over the Disputed Domains and published content across the Internet which has resulted in significant hardship to Plaintiff's operations and caused Plaintiff to lose significant benefit inherent in his economic relations.

76. Defendants have created, solicited and published on websites false and defamatory statements regarding Plaintiff that have interfered with Plaintiff's business relationships.

77. These false and defamatory statements have been communicated with the knowledge that other parties had an existing or prospective business relationship with Plaintiff and with the intention of interfering with that relationship.

78. Defendants' wrongful interference with Plaintiff's business relations has been willful and deliberate and caused Plaintiff to incur loss and damage.

79. Plaintiff is entitled to a damage award against Defendants for intentional interference with economic relations in an amount to be determined at trial, plus costs and attorney fees.

## IV.   PRAYER FOR RELIEF

WHEREFORE, on the above claims, Plaintiff prays for judgment against Defendants as follows:

1. That Defendants, their agents, officers, partners, servants, affiliates, employees, attorneys, and representatives, and all those in privy or acting in consent or participation with Defendants, and each and all of them, be permanently enjoined from:

    (a) Publishing, causing to be published, or allowing to be published, any claim that Plaintiff has embezzled money, committed sex crimes, or declared bankruptcy three times or more;

    (b) Further registrations of domain names incorporating, wholly or in part, the common law service of Plaintiff;

    (c) Committing any act that dilutes, or is likely to dilute, the distinctiveness of Plaintiff's BRADLEY T. GOULDING mark;

    (d) Instructing, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to in this paragraph and its subparagraphs.

2. That Defendants pay compensatory damages in an amount to be determined at trial;

3. That Defendants pay damages to Plaintiff for violations of § 43 of the Lanham Act, codified at 15 U.S.C. § 1125, §§ 1962(c) and 1962(d); as well as the ACPA.

4. That Defendants pay punitive damages to Plaintiff;

5. That Defendants pay attorney fees and costs;

6. For any other such relief as the Court may deem necessary.

DATED AND SIGNED this  4th  day of November, 2014.

/s/ _____

STEVEN L. RINEHART
*Attorney for Plaintiff*